IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICHOLAS PASQUALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1224 (MN) |
| | ) |
| KBR, INC. and TECHNICAL STAFFING RESOURCES, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Daniel F. McAllister, MCALLISTER FIRM, LLC, Wilmington, DE – Attorney for Plaintiff

Thaddeus J. Weaver, DILWORTH PAXSON LLP, Wilmington, DE; Cecily L. Kaffer, THE KULLMAN FIRM, Mobile, AL; Setara C. Ozan, THE KULLMAN FIRM, Birmingham, AL – Attorneys for Defendants

January 16, 2024
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion for summary judgment (D.I. 28) of KBR, Inc. ("KBR") and Technical Staffing Resources, LLC (collectively "Defendants"). For the reasons set forth below, the Court GRANTS Defendants' motion.

**I.     BACKGROUND**

**A.     Factual Background**

Plaintiff Nicholas Pasquale ("Plaintiff") is a male Delaware resident over the age of 40. (D.I. 1-1 at 1). Plaintiff worked for Defendants almost continuously from 1995 through 2016, holding several Project Manager and Project Engineer positions. (D.I. 1-1 at 4-5; D.I. 40 at 16-17). In late 2019 and early 2020, Plaintiff applied for four open positions with KBR. (D.I. 1-1 at 6). KBR designated these positions as "Project Manager-Engineering (R2004416)," "Engineering Project Manager (R2005066)," "Associate Project Manager-Engineering (R2004415)," and "Senior Project Manager-Engineering (R1083971)." (D.I. 51 at 5). Plaintiff applied for the first three positions in late November 2019; he applied for the "Senior Project Manager-Engineering (R1083971)" role on February 2, 2020. (D.I. 42 at 2).

On December 9 and 10, 2019, KBR Energy Services Program Manager Kenneth Page ("Page") emailed several KBR employees requesting input on Plaintiff's qualifications. (D.I. 31 at 12-15). Chief Technical Professional Leader Gary Miller ("Miller") replied that Plaintiff "should be able to do the job." (D.I. 50-1 at 65). Another KBR employee, John Hamilton ("Hamilton"), informed Page either orally or via email that he did not consider Plaintiff to have strong engineering abilities. (D.I. 50-1 at 14; D.I. 31 at 6-8 and 20-22).

Plaintiff's former supervisor, Charles "Chuck" Brodeur ("Brodeur"), emailed Page that Plaintiff's "best traits are that he is organized and communicates well," and that he would "probably be better suited for the role" that involved supervision by another employee. (D.I. 31

at 17). He also stated that Plaintiff "was not a technically strong CSA [civil, structural, and architectural] engineer" and "I don't think that he has worked very much over the past 3 or 4 years." (D.I. 31 at 17).

Brodeur sent a separate email to Hamilton, which Page was not copied on but nonetheless says he considered. (D.I. 31 at 8-9). Brodeur reiterated his comments about Plaintiff's engineering skills and lack of recent work, and further stated that Plaintiff "can cause trouble with his negative attitude at times." (D.I. 31 at 8, 22). Page also says he considered an unsolicited 2018 email in which Brodeur had shared another employee's opinion that Plaintiff "would not be considered as a high quality additional" [sic] to one of KBR's facilities. (D.I. 31 at 8, 24).

Miller interviewed Plaintiff on December 17, 2019. (D.I. 40 at 6). Plaintiff has stated that during this interview, Miller told him that a new KBR manager "doesn't want people with white hair." (D.I. 31 at 257). On January 30, 2020, Plaintiff emailed Brodeur requesting a recommendation. (D.I. 1-1 at 5, 12-14). Brodeur wrote in his reply email that "we have a new leader who oversees our business at the corporate level . . . At his last meeting with our group, he kept repeating that we need to recruit and mentor the next generation of engineers. He doesn't seems [sic] to have any value for experienced people and he is not shy in expressing his opinion to the point of making people feel uncomfortable. My opinion is that you will have an uphill battle getting into KBR for anything other than a short term emergency project need position. Sorry to relay my perception of the reality of life at KBR, but I don't want you to get your hopes up." (D.I. 1-1 at 13).

On February 10, 2020, after Plaintiff informed Brodeur via email that he had been rejected for three of the positions, Brodeur replied, "It doesn't surprise me. Opportunities are for the young at KBR." (D.I. 1-1 at 12).

Defendants closed the Project Manager-Engineering (R2004413) opening ("the R2004413 position") and the Engineering Project Manager (R2005066) opening ("the R2005066 position") without filling them. (D.I. 42 at 2). Defendants hired two other individuals for the two other roles (respectively "the R1083971 position" and "the R2004415 position"). (D.I. 42 at 2-3). The resumes of Plaintiff and the successful applicants do not indicate their ages. (D.I. 40 at 8-20). They do, however, show that the successful applicants graduated from college in 1996 and 2012. (D.I. 40 at 8, 12). Plaintiff graduated from college in 1978; his resume lists work experience dating back to 1985. (D.I. 31 at 43; D.I. 40 at 19).

**B.     Procedural Background**

In the summer of 2020, Plaintiff filed an administrative charge with the Delaware Department of Labor Office of Anti-Discrimination and the U.S. Equal Employment Opportunity Commission. (D.I. 1-1 at 4). The former agency reached a no cause determination and issued a Final Determination and Right to Sue Notice on May 20, 2022. (D.I. 1-1 at 4). Plaintiff filed his Complaint in Delaware Superior Court on August 4, 2022. (D.I. 1-1 at 3). He alleged that Defendants' actions gave rise to one count of age discrimination in violation of the federal Age Discrimination in Employment Act ("ADEA") and 19 *Del. C.* § 710 *et seq*. (D.I. 1-1 at 9). Defendant removed the case to this Court on September 20, 2022. (D.I. 1 at 1).

Defendants filed the instant motion on August 31, 2023. (D.I. 28 at 1). After both sides requested additional discovery, (D.I. 26; D.I. 39 at 10-12), this Court gave Plaintiff leave to depose three key witnesses who had previously been noticed for deposition. (D.I. 45). These depositions are now complete, (D.I. 50 at 1), and the parties have filed supplemental briefs. (D.I. 50, 51).

Defendants' opening brief in support of its motion for summary judgment argues that Plaintiff cannot establish a *prima facie* case of discrimination with respect to two of the four positions at issue because Defendants closed those positions without filling them. (D.I. 30 at 9-

10). Regarding one of the other two positions that were filled, Defendants argue that Plaintiff cannot establish a *prima facie* case of discrimination. (D.I. 30 at 10-12). For both positions that were filled, Defendants argue both that they had legitimate, non-discriminatory reasons not to hire Plaintiff and that Plaintiff cannot show that these reasons were pretextual. (D.I. 30 at 12-15; D.I. 43 at 12-13).

## II. LEGAL STANDARDS

Plaintiff has alleged violations of both the ADEA and the Delaware Discrimination in Employment Act. (D.I. 1-1 at 9). To assess summary judgment motions under both statutes, this Court uses the burden-shifting framework from the Supreme Court's holding in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] *See, e.g., Alred v. Eli Lilly and Company*, 771 F.Supp.2d 356, 365-66 (D. Del. 2011) ("Generally, the same evidence required to prevail on a claim under the ADEA is required to prevail on a claim of age discrimination brought under the DDEA."); *Shahin v. State*, No. CV 10-956-LPS, 2013 WL 5273297, at *5-*7 (D. Del. Sept. 18, 2013), *aff'd*, 563 F. App'x 196 (3d Cir. 2014).

Under this framework, Plaintiff must first make out a prima facie case of age discrimination by showing that: (1) he is at least forty years old; (2) that he is qualified for the job; (3) that he suffered an adverse employment action; and (4) that he was passed over in favor of someone else "who was sufficiently younger so as to support an inference of a discriminatory motive." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Willis v. UPMC Children's*

---

[1] Plaintiff argues that the *McDonnell Douglas* framework does not apply because he has presented "direct evidence" of discrimination. (D.I. 39 at 12-13). The comments cited, however, do not constitute direct evidence. *See Sosky v. International Mill Service, Inc.*, 1996 WL 32139 at *4 (E.D. Pa. Jan. 25, 1996) (A supervisor's comment that the "young should be given a chance," along with sporadic jokes about an employee's age and proximity to retirement, is not direct evidence.). Thus, the *McDonnell Douglas* framework applies. *Id.*

4

*Hosp. of Pittsburgh*, 808 F. 3d 638, 644 (3d Cir. 2015) and citing *McDonnell Douglas*, 411 U.S. at 802-03)).

Once a prima facie case has been shown, the employer must offer evidence "that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason" for the adverse employment action. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). Once the employer has offered this evidence, the Plaintiff can survive summary judgment by submitting evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller*, 130 F. 3d at 1108 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

### III. DISCUSSION

#### A. The R2004413 and R2005066 Positions

Defendant closed the R2004413 and R2005066 positions without filling them. (D.I. 42 at 2). When "a plaintiff applies for a position that is never filled, [he] is necessarily unable to 'satisfy the fourth element [of a *prima facie* discrimination case] that the employer sought to, or did, fill the position with a similarly qualified person.'" *Bearer v. Teva Pharms. USA, Inc*, No. 19-5415, 2021 WL 4145053, at *14 (E.D. Pa. Sept. 8, 2021) (citing *Tsakonas v. Nextel Commc'ns, Inc.*, No. 04-CV-1363 (PGS), 2006 WL 2527998, at *6 (D. N.J. Aug. 31, 2006) and *Lula v. Network Appliance*, 255 F. App'x 610, 612 (3d Cir. 2007)).[2] Plaintiff has not argued, and there is no evidence to suggest, that Defendants' decisions to close the positions without filling them was causally connected to his claims. Thus, Plaintiff's evidence as to claims based on the closed

---

[2] With respect to the R2004413 and R2005066 positions, Plaintiff has not presented any argument or evidence that "similarly situated individuals outside [his] class were treated more favorably" in similar circumstances, "as an alternative to the original fourth prong of the prima facie case." *Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 27 (3d Cir. 2010).

5

R2004413 and R2005066 positions does not support a *prima facie* case of discrimination, and summary judgment in favor of Defendants is appropriate.

B. <u>The R1083971 and R2004415 Positions</u>

1. <u>Steps 1 and 2 of the *McDonnell Douglas* Inquiry</u>

Based on the arguments presented, the Court assumes without deciding that Plaintiff has satisfied the first step of the *McDonnell Douglas* inquiry, adequately pleading all four elements of a *prima facie* case of discrimination for the R1083971 and R2004415 positions. Thus, the Court turns to whether Defendants have provided a "legitimate, nondiscriminatory reason" for declining to hire him. *Keller,* 130 F.3d at 1108. Here, Defendants have offered evidence that Plaintiff's performance was lacking in at least some ways during his prior employment. For example, Page stated that Brodeur and other KBR employees gave him negative feedback about Plaintiff's engineering abilities and attitude. (D.I. 31 at 9-10).³ Page therefore had evidence of poor performance by Plaintiff, *i.e.,* a "legitimate, nondiscriminatory reason" for declining to hire him. *See Mowafy v. Noramco of Delaware, Inc.,* 620 F.Supp.2d 603, 613 (D. Del. 2009) (citing *Wooler v. Citizens Bank*, 274 F. App'x 177, 180 (3d Cir. 2008)).

---

³     Plaintiff argues that Defendants' Declaration did not meet its burden of production on this step because it referenced negative feedback from two KBR employees, Hamilton and Steve Simensen ("Simensen"), without giving Plaintiff a fair opportunity to rebut their accusations. (D.I. 39 at 15-16) (citing D.I. 31 at 9-10; *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254-55 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). Since filing his Answering Brief, Plaintiff has deposed Hamilton and filed a Supplemental Brief responding to his comments. (D.I. 50 at 7-8; D.I. 50-1 at 2-21). Moreover, even if the 2018 email from Brodeur to Page that referenced Simensen's feedback were excluded, Hamilton's accounts (D.I. 50-1 at 14; D.I. 31 at 6-8 and 20-22) and Brodeur's other emails (D.I. 31 at 17, 22) constitute additional evidence of poor work performance.

### 2. Step 3 of the *McDonnell Douglas* Inquiry

To rebut Defendants' proffered reason, Plaintiff must put forward evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller*, 130 F. 3d at 1108 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). Plaintiff argues that he meets this standard because a jury could find "cat's paw" liability, in which an individual with discriminatory animus influences the ultimate decision-maker to take an adverse employment action. (D.I. 39 at 19-20) (citing *Mason v. S.E. Penn. Transportation Auth.*, 134 F.Supp.3d 868, 874 (E.D. Pa. 2015) and *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001)).

Plaintiff's theory rests on the two emails that Brodeur sent Plaintiff, in which he wrote that a new KBR leader "kept repeating that we need to mentor the next generation of engineers," and that "opportunities are for the young at KBR." (D.I. 1-1 at 12-13). Plaintiff contends that: (1) these emails show that Brodeur may have "either harbored a discriminatory animus toward [Plaintiff] himself, or believed KBR's policies prevented hiring an older person" (D.I. 50 at 7); and (2) these views may have prompted Brodeur, when asked about Plaintiff's qualifications, to send Page an email with some negative comments about Plaintiff's abilities, in turn prompting Page not to hire Plaintiff. (D.I. 50 at 7-8).

Plaintiff argues that the Court must deny summary judgment because a material dispute of fact exists as to Brodeur's motivations for writing these emails, because Brodeur stated in his deposition that he had been dishonest when he told Plaintiff that KBR preferred to hire younger workers. (D.I. 50 at 7). If a perception of discriminatory hiring practices did not actually motivate Brodeur to email Page and Hamilton about Plaintiff's shortcomings, that email cannot trigger ADEA liability. If, on the other hand, ageism or the perception of ageism did prompt Brodeur to

7

send negative comments about Plaintiff, this claim can only proceed if his posited sequence of events meets the Third Circuit's standard for cat's paw liability.

Plaintiff cites a 2001 religious-discrimination case in which the Third Circuit held that "it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision." (D.I. 39 at 20) (citing *Abramson*, 260 F.3d at 286). In 2011, however, the Supreme Court held that discriminatory action must proximately cause an adverse employment action for cat's paw liability to attach. *Staub v. Proctor Hosp.*, 562 U.S. 411, 419-21 (2011). In 2015, the Third Circuit found in *Jones v. S.E. Penn. Transportation Authority* that proximate cause "will not exist when the employer does not rely on the 'supervisor's biased report' in taking the ultimate adverse action." 796 F.3d 323, 330-31 (3d Cir. 2015) (citing *Staub*, 562 U.S. at 420-21).

The Third Circuit has found sufficient reliance for cat's paw liability "where there was no evidence that the employer relied on anything besides the allegedly biased supervisor's say-so" before terminating an employee. *Jones*, 796 F.3d at 331 (citing *McKenna v. City of Philadelphia*, 649 F.3d 171, 179 (3d Cir. 2011)). The record here, however, contains evidence that Defendants relied on more than "the allegedly biased supervisor's say-so." One employee not alleged to have held animus, John Hamilton,[4] gave Page his opinion that Plaintiff lacked strong engineering skills. (D.I. 50-1 at 14 and D.I. 31 at 20-21).[5] Even the individuals alleged to have held bias made comments about Plaintiff that could not have stemmed from bias. In the December 2019 email

---

[4] Plaintiff argues that Hamilton's deposition testimony "corroborates" some details in Brodeur's emails. (D.I. 50 at 6). Plaintiff does not allege that Hamilton himself held ageist views or believed KBR had a policy of disfavoring older applicants.

[5] Plaintiff makes much of certain discrepancies between Hamilton's deposition testimony about this exchange, Page's Declaration, and the contents of two emails dated December 23, 2019. (D.I. 50 at 7-8 (citing D.I. 50-1 at 14 and D.I. 31 at 6-8 and 20-22)). Each of these accounts, however, indicates that Hamilton gave Page a negative assessment of Plaintiff's engineering abilities.

8

where Brodeur gave Page some negative insights about Plaintiff, Brodeur also wrote that Plaintiff's "best traits are that he is organized and communicates well," and stated that Plaintiff would fit better in a position where another employee would supervise him. (D.I. 31 at 17). Another KBR employee, Gary Miller, told Page that Plaintiff "should be able to do the job." (D.I. 50-1 at 65). Even if Brodeur and Miller believed, as Plaintiff alleges, (D.I. 39 at 13; D.I. 50 at 8), that KBR disfavored older hires, these comments would not have served such a policy.

The record thus shows that Page considered varied input on Plaintiff's competence from three different individuals before deciding not to hire Plaintiff for the R1083971 and R2004415 positions.[6] This is more than the "say-so" of one biased individual that the Third Circuit has found insufficient to trigger cat's paw liability. *Jones*, 796 F.3d at 331 (citing *McKenna*, 649 F.3d at 179).

The Third Circuit has also declined to find cat's paw liability in situations where an allegedly biased individual reported an employee's wrongdoing, thereby "getting the ball rolling" on an independent investigation that led to termination. *See Jones*, 796 F.3d at 331; *Sterrett v. Giant Eagle*, 681 F. App'x 145, 152 (3d Cir. 2017); *Lamb v. Montgomery Township*, 734 F. App'x 106, 113 (3d Cir. 2018). Although the initial input may have been tainted by bias, that was diluted by information gathered from an outside investigation. *See Jones*, 796 F.3d at 331; *Sterrett*, 681 F. App'x at 152; *Lamb*, 734 F. App'x at 113. To the extent these cases resemble Defendants' failure to hire Plaintiff, they also suggest that Brodeur's allegedly biased comments did not

---

[6] Defendants argue that Miller's interview statement that KBR only wanted to hire younger workers is inadmissible hearsay. (D.I. 42 at 3-4). Defendants also argue that Brodeur's first email to Plaintiff constitutes a "stray remark" that should not be given great weight. (D.I. 42 at 5; D.I. 51 at 7). Plaintiff argues that Brodeur's 2018 comments "say nothing of substance about [Plaintiff's] capabilities or anything else." (D.I. 39 at 14). The Court need not address these contentions as accepting any of them would only tip this analysis even further in Defendants' favor.

underpin the final decision enough to trigger cat's paw liability. For these reasons, Brodeur's honesty does not impact the outcome of the case.

For these reasons, Plaintiff's cat's paw liability theory fails, and Plaintiff has not met his burden under the third step of the *McDonnell Douglas* inquiry. The Court must grant Defendants' motion for summary judgment with respect to the R2004415 and R1083971 positions.

### IV.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment (D.I. 28). An appropriate order will follow.